UNITED STATES of America

v.

**Barry R. HEIMBACH, Sr.**

**Crim. A. No. 89–483–01.**

United States District Court,
E.D. Pennsylvania.

Oct. 16, 1992.

Linda Dale Hoffa, Asst. U.S. Atty., E.D.Pa., Philadelphia, PA, for plaintiff.

Marc S. Fisher, Allentown, PA, for defendant.

## FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW, AND ORDER

HUYETT, District Judge.

### I. Findings of Fact

1. A grand jury of the United States District Court for the Eastern District of Pennsylvania indicted Defendant Barry R. Heimbach, Sr., Barry R. Heimbach, Jr., and Phillip R. Stephen on charges of conspiracy in violation of 18 U.S.C. § 371 (Count One) and structuring financial transactions to avoid the currency transaction reporting requirements of 31 U.S.C. § 5313(a) in violation of 31 U.S.C. §§ 5324(3) and 5322(b) and 18 U.S.C. § 2 (Counts Two and Three).

2. Defendant, along with the two other men, purchased two properties, one at Eagle Lakes Estates in Covington Township, Lackawanna County, Pennsylvania for approximately $51,000 and the other at Kriss Pines Estates, Franklin Township, Carbon County, Pennsylvania for approximately $77,000. Defendant purchased the Eagle Lakes property in July 1988 and the Kriss Pines Estates property in August 1988. Defendant used cashier's checks and money orders purchased in June 1988 to purchase the Eagle Lakes property and cashier's checks and money orders purchased in July 1988 to purchase the Kriss Pines property. Defendant structured the currency transactions by purchasing the checks and money orders in amounts of less than $10,000 so as to avoid the currency transaction reporting requirements of 31 U.S.C. 5313(a) (requiring commercial banks, loan associations, and other financial institutions to report any currency transaction in excess of $10,000).

3. Defendant pleaded guilty to Counts One and Three of the indictment. The United States moved to dismiss Count Two. The Court granted the motion.

4. On July 25, 1990 the Court sentenced Defendant to a term of imprisonment of thirty-seven months, supervised release for a term of three years, a fine of $50,000, and a special assessment of $100. The Court ordered Defendant to pay the special assessment immediately and to pay the fine within the first year of supervised release. The Court ordered that the sentence imposed run consecutive to the sentence imposed by Judge Cahn in Eastern District of Pennsylvania Criminal Action No. 89–464–03.

5. A grand jury indicted Defendant on charges of conspiracy to distribute cocaine and distribution of cocaine in Criminal Action No. 89–464–03. Defendant pleaded guilty. Judge Cahn sentenced Defendant to a term of imprisonment of eighteen months.

6. On June 30, 1992 Defendant sent the Court a letter in which he requested that he be "released or pardoned" from paying the $50,000 fine imposed by the Court in this case because of his poor health, his poor financial condition, and the limited prospects of his obtaining any substantial employment in the future.

7. This Court treated Defendant's letter as a *pro se* motion for remission of the criminal fine, requested the comments of the United States Attorney's Office and the Probation Office, and scheduled a hearing.

8. On September 15, 1992 the Court held an evidentiary hearing on Defendant's *pro se* motion. Defendant testified and the Court received into evidence a copy of the Presentence Report as Defendant Exhibit 1. On behalf of the United States, Special Agent Kim Keperling of the Internal Revenue Service testified. Through her testimony, the government read into evidence the transcript of the grand jury testimony of Deborah Quier given November 16, 1989 page 5, line 25 to page 7, line 19; and page 8, line 18 to page 10, line 12. Also through her testimony, the government read into evidence the transcript of the grand jury testimony of Russell S. Hampton, Jr. given November 16, 1989 page 4, line 1 to page 8, line 3; page 9, line 15 to page 10, line 16; and page 13, line 13 to page 14, line 1. The Court admitted into evidence, over Defendant's objection, the entire transcripts of both Quier's and Hampton's testimony as Government Exhibits 1 and 2, respectively. In addition, the Court received into evidence the Merchant's National Bank of Allentown Safe Deposit Box contract and record for Defendant's safe deposit box, marked as Government Exhibit 3. Finally, the Court admitted into evidence a list of purchases from Bennett Chevrolet Corporation made by Defendant from 1987 through 1988, marked as Government Exhibit 4. Counsel made arguments and, following the hearing, submitted proposed findings of fact and conclusions of law.

9. Defendant is 48 years old and has served two years of his sentences. He is incarcerated in FCI–LaCuna, Anthony, New Mexico/Texas.

10. Defendant has been diagnosed as a diabetic and takes medication three times daily to control the disease. Defendant has acute asthma for which he takes medication daily, and has cataracts in both eyes that restrict his vision.

11. Defendant is currently in poor health.

12. The Bureau of Prisons provides his medications and eyeglasses, but he does not have medical insurance upon his release from prison.

13. Defendant has a General Equivalency Diploma, which he obtained while incarcerated, and is entering a computer training program in prison to gain computer skills.

14. Prior to 1986 Defendant worked as a laborer in the construction industry and as a bartender in the Allentown area. He does not desire to return to these occupations after he is released from prison. From 1986 until his imprisonment, Defendant was not employed on a full-time basis. In prison he cleans floors.

15. At the time of his arrest on August 31, 1988 by the Allentown Police Department, Defendant owned two properties—one at Eagle Lakes Estates and the other at Kriss Pines Estates—which he had purchased in July and August 1988.

16. The United States Attorney for the Middle District of Pennsylvania brought forfeiture proceedings against these two properties. They were forfeited to the United States and thereafter sold. The United States retained the proceeds.

17. At the time of his arrest Defendant owned three motor vehicles that he had purchased in May, June, and July 1988. These motor vehicles were forfeited to the City of Allentown in connection with Defendant's 1988 local drug arrest.

18. At the time of his arrest, Defendant rented a safe deposit box at the Merchant's National Bank of Allentown located in Allentown, Pennsylvania.

19. Defendant claims that, at the time of his arrest, the safe deposit box contained $30,000 in cash. Defendant claims that he removed $20,000 to pay attorney's fees for himself and that he removed $5,000 to pay attorney's fees for his son. Defendant claims that he retained $5,000 for living expenses from September 1988 onward.

20. Subsequent to his arrest, Defendant met with various agents of the Internal Revenue Service, the Drug Enforcement

Administration, the Federal Bureau of Investigation, and the United States Attorney's Office for the Eastern District of Pennsylvania. Defendant told them that he had no money. He did not tell them about the $5,000 he set aside for living expenses.

21. Defendant claims that he does not own any real estate, motor vehicles, stocks, bonds, securities, retirement plans, pensions, profit sharing plans, businesses, certificates of deposits, bank accounts, and that he is not owed any money from any person, business, or entity. He further claims that he did not own any of these things, nor was he owed any money, at the time of his sentencing.

22. Defendant completed a personal financial statement on February 6, 1990. He claimed that he had no assets, liabilities of $1,700, monthly expenditures of $453, and no income. The Probation Office did not verify these figures.

23. The Court finds that Defendant's claims are not credible in light of the evidence presented by the United States.

24. Defendant is a convicted felon and admitted drug trafficker whose main source of income since 1986 is from his drug trafficking activities.

25. Defendant earned from his illegal drug sales at least $250,000 which he kept in a safe deposit box at the Merchants National Bank of Allentown. Deborah Quier, Defendant's cousin, knew about Defendant's drug trafficking activities because Defendant sold her drugs. He showed her the money in his safe deposit box about six or seven times. The last time he showed her, approximately two months before he was arrested in August 1988, she saw $250,000 in the safe deposit box arranged in stacks of $10,000. Russell Hampton who also knew about Defendant's drug activities because he and Defendant purchased drugs from each other, estimated that Defendant earned $250,000 from his drug activities.

26. From the at least $250,000 of drug proceeds, the following expenditures have been established through the testimony of Defendant and the evidence submitted by the United States:

a. Defendant used approximately $128,-000 to purchase the two properties that were the subject of the indictment in this case.

b. Defendant purchased three automobiles in 1988 from Bennett Chevrolet Corporation. He spent a total amount of $22,-232.40 in cash for these vehicles.

c. Defendant spent $25,000 in attorneys' fees for his son and himself.

27. Defendant last visited his safe deposit box on September 2, 1988 and removed the entire contents.

28. Therefore, there remains approximately $75,000 which Defendant had in his possession and control for which he has failed to give a satisfactory explanation.

## II. Discussion

Under the former section 3573 of Title 18 of the United States Code, a defendant had the opportunity to petition the district court to modify or remit a fine. 18 U.S.C.A. § 3573 (West 1985). Former section 3573 provided in part:

A defendant who has been sentenced to pay a fine, and who—

(1) can show a good faith effort to comply with the terms of the sentence and concerning whom the circumstances no longer exist that warranted the imposition of the fine in the amount imposed or payment by the installment schedule, may at any time petition the court for—

(A) an extension of the installment schedule, not to exceed two years except in case of incarceration or special circumstances; or

(B) a remission of all or part of the unpaid portion including interest and penalties.

*Id.* Congress enacted former section 3573 as part of the Sentencing Reform Act of 1984, Pub.L. No. 98–473, Title II, § 212(a)(2), 98 Stat. 1997 (1984). That section became effective on November 1, 1986. *See* Pub.L. No. 98–473, § 235(a)(1), 98 Stat. 2032 (1984). It lasted only six weeks, however, because the Criminal Fine Improvements Act of 1987 repealed former section

3573 and replaced it with a new section 3573, effective December 11, 1987. *See* Pub.L. No. 100–185, § 8(a), 101 Stat. 1282 (1987); *United States v. Linker*, 920 F.2d 1 (7th Cir.1990). Current section 3573 provides in part:

Upon petition of the Government showing that reasonable efforts to collect a fine or assessment are not likely to be effective, the court may, in the interest of justice—

(1) remit all or part of the fine or special assessment including interest and penalties;

(2) defer payment of the fine or special assessment to a date certain or pursuant to an installment schedule; or

(3) extend a date certain or an installment schedule previously ordered....

This section shall apply to all fines and assessments irrespective of the date of imposition.

18 U.S.C.A. § 3573 (West Supp.1992). The Seventh Circuit in *Linker* held that the language of this section is clear and unambiguous. By its own terms, it applies strictly to the government, and not to defendants. *Linker*, 920 F.2d at 2.

### III. Conclusions of Law

1. The current version of 18 U.S.C. § 3573 applies to the motion before the Court.

2. Under the current version of 18 U.S.C. § 3573, only the United States government may petition this Court to remit a defendant's fine.

3. Because Defendant, not the government has filed the instant motion, the Court lacks the power to remit Defendant's fine. Thus, the Court denies Defendant's motion.